THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **NICK BOOTH, MARY JO BOOTH,** : <br> **KENNETH LEE, DOLLY LEE,** : <br> **HAROLD TINER, and ERA** : <br> **TINER,** : <br>   : <br> Plaintiffs, : <br>   : <br> v. : <br>   : <br> **BOARD OF REGENTS OF THE** : <br> **UNIVERSITY SYSTEM OF GEORGIA** : <br> **and BAYER CROPSCIENCE, LP,** : <br>   : <br> Defendants. : | Civil Action <br> No. 7:05-cv-34 |

## ORDER ON MOTION TO REMAND

Plaintiffs filed their original Complaint in this case on March 16, 2005, in the State Court of Clinch County. Defendants removed the case to this Court on April 22, 2005, alleging federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity of citizenship jurisdiction pursuant to 28 U.S.C § 1332. The case is now before the Court on Plaintiffs' motion to remand the case to the state court. (Doc. 18). Upon due consideration of the arguments of counsel and the relevant legal authorities, and for the reasons set forth below, the Court finds that it lacks subject-matter jurisdiction over the matter and that the motion to remand must be **GRANTED**.

The federal removal statute, at 28 U.S.C. § 1441, provides that a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." As a general rule, however, a plaintiff in a civil action is the "the master of the claim," with the power to choose the forum and define the nature of the case. Caterpillar, Inc. v. Williams, 482 U.S. 386, 391 (1987). Thus, a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law" Id. A removing defendant has the burden to demonstrate that federal subject-matter jurisdiction exists. Kirkland v. Midland Mortgage Co., 243 F.3d 1277, 1281 n. 5 (11th Cir. 2001). Because the law gives deference to a plaintiff's definition of his own claim, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095.

Plaintiffs' Complaint alleges that their blueberry crops were damaged by use of the herbicide "Rovral," produced by defendant Bayer CropScience, LP. ("Bayer"). The Complaint brings claims against Bayer for negligence, fraud/negligent misrepresentation, and breach of express warranty, all under Georgia law. The Complaint further alleges that defendant Board of Regents of the University System of Georgia ("Board of Regents") acted negligently by recommending to Plaintiffs that Rovral was safe for application on their blueberry bushes.

## I.     Federal Question Jurisdiction

Defendants contend that this Court has original jurisdiction over the case pursuant to federal question jurisdiction because the state law claims are completely pre-empted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.* The Supreme Court of the United States has recently rejected this argument in a nearly identical case, Bates v. Dow AgroScience, LLC., ___ U.S. ___, 125 S.Ct. 1788 (2005). In Bates, a group of Texas farmers alleged that their peanut crops were severely damaged by the application of a pesticide called "Strongarm." After unsuccessful negotiations with Dow, the farmers gave notice of their intent to bring suit under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). Before the farmers were able to initiate their suit, Dow filed a declaratory judgment action in federal district court, "asserting that petitioners' claims were expressly or impliedly pre-empted by FIFRA." Id. 125 S.Ct. at 1793. In answer to the declaratory judgment action the farmers brought counterclaims under the Texas DTPA, along with tort claims for negligent design, fraud, and breach of warranty. The counterclaims did not state any claims based upon federal law.

The Supreme Court held that the farmers' state-law claims for negligent design, breach of warranty, and violation of the Texas DTPA were not pre-empted by FIFRA. In arriving at this conclusion, the Court reasoned that FIFRA's pre-emption provision, at 7 U.S.C. § 136v(b) is not comprehensive, and that FIFRA "authorizes a relatively decentralized scheme that preserves a broad role for state regulation." Bates, 125 S.Ct at 1802. Section

136v(b) prohibits states from imposing "any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." The statute specifically permits states to "regulate the sale or use of any federally registered pesticide or device in the State," so long as such regulation does not permit any sale or use prohibited by FIFRA. 7 U.S.C. § 136v(a). By its terms, the pre-emption provision of Section 136v(b) applies only to requirements for labeling or packaging; "rules governing the design of a product . . . are not pre-empted." Bates, 125 S.Ct. at 1798. As the Court explains:

> Rules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirements for "labeling or packaging." None of these common-law rules requires that manufacturers label or package their products in any particular way. Thus, petitioners' claims for defective design, defective manufacture, negligent testing, and breach of express warranty are not pre-empted.

Id.

In finding that FIFRA allows common law and statutory claims under state law, the Court rejected the "inducement" argument offered by Defendants in this case. Defendants have argued that FIFRA pre-empts state-law negligence and breach of warranty claims because a verdict finding negligence in the design of Rovral would induce Bayer to change its label regarding the product's suitability for use on blueberries. In Bates the Court explains that the prohibitions in Section 136v(b) apply only to labeling "requirements." "A requirement is a rule of law that must be obeyed; an event, such as a jury verdict, that merely motivates an optional decision is not a requirement." Id. 125 S.Ct. at 1799. This distinction

4

is consistent with the provisions of Section 136v(a), which permit a state to impose additional regulations on the sale and use of pesticides that are more restrictive than the regulations under FIFRA.

In <u>Bates</u> the Supreme Court declined to decide whether fraud claims under Texas law were pre-empted by FIFRA. Application of the principles set forth in <u>Bates</u>, however, indicates that FIFRA would not pre-empt Plaintiffs' fraud claims under Georgia law in this case. The fraud claims have a more direct relationship to labeling than the negligence and warranty claims, and thus relate more directly to the pre-emptive provisions of Section 136v(b). In remanding the fraud claims to the Court of Appeals for the Fifth Circuit for further review, the Court in <u>Bates</u> noted that FIFRA's labeling provisions could co-exist with state fraud law, provided that the requirements imposed by the state law were consistent with the labeling requirements of FIFRA. State fraud law, in fact, could provide an additional mechanism of enforcement for FIFRA's labeling requirements, for "although FIFRA does not provide a federal remedy to farmers or others who are injured as a result of a manufacturer's violation of FIFRA's labeling requirements, nothing in § 136v(b) precludes States from providing such a remedy." <u>Bates</u>, 125 S.Ct. at 1801. FIFRA pre-empts a cause of action for fraud only if the state law conflicts with FIFRA:

> For example, were the Court of Appeals to determine that the element of falsity in Texas' common-law definition of fraud imposed a broader obligation than FIFRA's requirement that labels not contain "false or misleading statements," that state-law cause of action would be pre-empted by § 136v(b) to the extent of that difference.

5

Id. at 1803. To the extent that the Georgia's law of fraud is consistent with FIFRA's statutory and regulatory labeling requirements, therefore, Plaintiff's state-law fraud claims are permissible and do not create a federal question.

In this case, the requirements that would be imposed by the Georgia law of fraud are consistent with FIFRA. The federal statute requires that a pesticide label not contain statements that are "false or misleading in any particular." 7 U.S.C. § 136(q)(1)(A). The accompanying regulations prohibit any false or misleading statement regarding the effectiveness of the product (40 CFR 156.10(a)(5)(ii)) and any false or misleading statement regarding claims as to the safety of the product. 40 CFR 156.10(a)(5)(ix). The five elements of a common-law fraud claim under Georgia law are "(1) false representation by a defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." Pyle v. City of Cedartown, 524 S.E.2d 7, 9 (Ga. Ct. App. 1999). The first element of the cause of action for fraud matches FIFRA's prohibitions against false or misleading labeling.

The specific claims in the Complaint are consistent with FIFRA. Plaintiffs allege that Bayer "knew or should have known that Rovral was harmful to blueberry bushes at the time it manufactured and marketed Rovral to Plaintiffs." Complaint, Doc. 1, Ex. A, ¶ 25. Plaintiffs can prove this claim for fraud only if they prove that the label contained false or misleading statements regarding Rovral's effectiveness or safety for use on blueberry bushes.

Following the reasoning of <u>Bates</u>, FIFRA does not pre-empt the State of Georgia from providing its own remedy for this alleged labeling violation.

Plaintiffs have shaped their claims in such a way as to avoid any federal-law matters and to allege causes of action solely under Georgia law. Their decision to do so is within their right as plaintiffs to define their own claims. The provisions of FIFRA do not transform these state-law claims into a federal question. In the absence of any federal question, this Court has no jurisdiction under 28 U.S.C. § 1331.

### II.     Diversity Jurisdiction

This Court also lacks jurisdiction under the diversity of citizenship provisions of 28 U.S.C. § 1332 because there is not a complete diversity of citizenship between the parties. "Where jurisdiction is predicated on diversity of citizenship, all plaintiffs must be diverse from all defendants." <u>Univ. of S. Ala. v. American Tobacco Co.</u>, 168 F.3d 405, 412 (11th Cir. 1999) (citing <u>Strawbridge v. Curtiss</u>, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)). Most of the Plaintiffs in this case are residents of the State of Georgia. Defendant Board of Regents also resides in Georgia. Where at least one of the Defendants and at least one of the Plaintiffs are residents of the same state, there can be no jurisdiction based on diversity of citizenship.

Defendants' contention that the Board of Regents was "fraudulently joined" is unsupported at this stage of the proceedings. In <u>Crowe v. Coleman</u>, 113 F.3d 1536 (11th Cir.

1997), the Eleventh Circuit set forth in detail a defendant's "heavy" burden on seeking remand of a diversity action on the basis of fraudulent joinder:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir.1989). The burden of the removing party is a "heavy one." B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. Unit A 1981).
>
> To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. Id. at 549. The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties. Id.
>
> While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)," id. at n. 9, the jurisdictional inquiry "must not subsume substantive determination." Id. at 550. Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." Id. at 548- 49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. See Id. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir.1983), superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir.1993).
>
> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." Parks v. The New York Times Co., 308 F.2d 474, 478 (5th Cir.1962). The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court,

      only to have it determined that the court lacked jurisdiction on removal," see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc., 507 F.Supp. 740, 744 (S.D.Ga.1981) (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3721), a result that is costly not just for the plaintiff, but for all the parties and for society when the case must be relitigated.

Id. at 1538.

      In this case, Defendants have failed to meet their burden of showing that there is no possibility that Plaintiffs can establish a cause of action under Georgia law. Defendants contend that the Board of Regents is protected from suit under the Georgia Tort Claims Act, O.C.G.A. § 50-21-20, *et seq*. This contention raises a substantive issue of Georgia law, and is in essence a motion to dismiss or for summary judgment. It is far from certain that Georgia law would bar suit against the Board of Regents in this case. As a result, this Court cannot be certain of its own jurisdiction, and it is the wiser course to remand the case to the courts of the State of Georgia, who are better suited to decide a difficult question of Georgia law.

      Defendants argue specifically that the Board of Regents is immune from suit pursuant to the provisions of O.C.G.A. §§ 50-21-24(1), (2), and (8). Section 50-21-24(1) provides that the State shall have no liability for losses that result from an "act or omission by a state officer or employee exercising due care in the execution of a statute, regulation, rule, or ordinance." Section 50-21-24(2) provides that the State shall have no liability for losses arising from the performance of or failure to perform a discretionary function. Section 50-21-24(8) provides immunity from losses from the performance of "Inspection powers or functions, including failure to make an inspection or making an inadequate or negligent

9

inspection of any property other than property owned by the state to determine whether the property complies with or violates any law, regulation, code, or ordinance or contains a hazard to health or safety."

Defendants focus their arguments primarily on the "discretionary function" immunity of Section 50-21-24(2). "Discretionary function" is defined in the statute to mean "a function or duty requiring a state officer or employee to exercise his or her policy judgment in choosing among alternate courses of action based upon a consideration of social, political, or economic factors." O.C.G.A. 50-21-22(2). Defendants contend that the Board of Regents was exercising a discretionary function when its local agricultural extension service recommended Rovral for use on blueberry bushes.

Determining whether the recommendation was a discretionary function will require the Court to resolve uncertain issues of Georgia law. There is no Georgia case that is directly analogous to the situation in this case, and the guidance offered by the Georgia courts is confusing. The Supreme Court of Georgia has broadly outlined its analysis of the discretionary function exception in <u>Edwards v. Department of Children and Youth Services</u>, 525 S.E.2d 83 (Ga. 2000). In <u>Edwards</u>, the parents of a detainee at a Youth Development Center sued the state for failing to provide proper medical care to their daughter, who died from a subdural hematoma while incarcerated. The Court of Appeals of Georgia held that the State had not waived its sovereign immunity because the employees were exercising a discretionary function in determining the type of medical care to provide. The Supreme

Court reversed. In analyzing the discretionary function exception, the Court reasoned that the statute's specific definition of the term created a break with prior case law:

> Because the statute included a definition of discretionary function or duty, we explicitly rejected our prior case law that distinguished between the discretionary and ministerial acts of state employees as the basis for state liability. Instead, we approved of decisions from other jurisdictions holding that the discretionary function exception applies only to basic governmental policy decisions, rejecting the state's argument that the exception includes any decision affected by social, political, or economic factors.

Id. at 85. The Court further explained that the statutory definition of a discretionary function was more narrow than "the definition that had been developed in prior case law and applied in several cases by the court of appeals." Id. The prior case law had developed a distinction between ministerial and discretionary acts, and had defined discretionary acts to encompass almost any decision that had a social, political, or economic component and called for a degree of judgment. The Supreme Court's use of the phrase "basic governmental policy decisions" limits the expanse of the exemption to actions and decisions taken at a higher level, in the realm of overarching policy rather than day-to-day decision-making.

Confusion arises in decisions from the Court of Appeals of Georgia subsequent to Edwards, which seem to persist in applying the older, broader definition of discretionary function. In two cases the court has held that personnel decisions are a discretionary function. Bd. of Public Safety v. Jordan, 556 S.E.2d 837 (Ga. Ct. App. 2001); Ga. State Bd. of Pardons and Paroles v. Finch, 605 S.E.2d 414 (Ga. Ct. App. 2004). The court in Jordan quotes a pre-Edwards definition of the term, describing a discretionary act as one which

"calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."  Jordan, 556 S.E.2d at 843 (quoting Schulze v. DeKalb County, 496 S.E.2d 273, 276 (Ga. Ct. App. 1998)).  Schultze, as quoted in Jordan, relies on the ministerial/discretionary act distinction that was explicitly rejected in Edwards.  The Jordan court's use of the Schultze definition expands the definition of a discretionary function beyond the range of "basic governmental policy decisions" to encompass once again any act that requires a degree of "personal deliberation and judgment."  It is difficult to reconcile Edwards with subsequent cases in the court of appeals.  Doing so will involve the balancing of important policy concerns related to the State's waiver of its sovereign immunity.  As such, it is a task better suited to the courts of the State of Georgia.

In addition to the legal uncertainties of the discretionary function exception, the factual record is too incomplete at this early stage of the proceedings for the Court to determine whether the State has waived its sovereign immunity.  There is as yet no evidence to show how the Board of Regents decided to recommend Rovral.  There is no way to determine who was responsible for making decisions regarding recommendations.  The Complaint does not discuss any regulations, procedures, or policies of the Board of Regents that may have governed the issuance of product recommendations.  The information before the Court is simply insufficient to permit a full analysis of the discretionary nature of the process.

Similar factual issues make it impossible to determine whether the State has retained its sovereign immunity pursuant to O.C.G.A. § 50-21-24(1) or (8). It is possible that the alleged negligence of the Board of Regents occurred in the context of a state officer or employee exercising due care in the execution of a statute, regulation, rule, or ordinance, but it is not clearly established at this stage. Similarly, it is possible, but not clearly established, that the alleged negligence occurred in the exercise of inspection powers or functions. The Court cannot find that Plaintiffs have no possible cause of action against the Board of Regents under the Georgia Tort Claims Act, and therefore cannot find that joinder of the Board of Regents was fraudulent. If the joiner is not fraudulent, there is no diversity of citizenship among the parties and this Court has no jurisdiction. Uncertain of its jurisdiction, the Court must remand the case to the state court.

As a final matter, the Court rejects Defendants' argument that Plaintiffs' have "fraudulently pleaded jurisdictional facts" because they failed to bring their state-law claims as compulsory counterclaims in their answer to Bayer's separate declaratory judgment action in this Court (Bayer CropScience, LP v. Booth, *et al.*, Civil Action No. 7:04-cv-92). In that action, the Court has permitted the defendants (Plaintiffs in this action) to amend their answer to add the state-law counterclaims. There has been no waiver of those claims, therefore, and in the absence of judgment in that case there is no claim preclusion with regard to this case.

Accordingly, it is hereby ordered that the case be remanded to the State Court of Clinch County for adjudication on the merits.

SO ORDERED, this the 30th day of August, 2005.

**s/  Hugh Lawson**
HUGH LAWSON, JUDGE


chw